

FILED

FEB 27 2017

JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# United States District Court

for the

## Eastern District of North Carolina

___1___ Division

No. 5:17-cv-102-F

|   |   |   |
|---|---|---|
| JONATHAN P. GRAHAM, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
|  | ) | COMPLAINT |
| SECREATRY OF THE ARMY | ) | |
| Defendant | ) | |

1. Plaintiff Jonathan Pierre Graham, resides at 5405 Cazelet Court Garner, NC 27529, 919-455-1758, joncin90@hotmail.com.

2. The named defendant is the Secretary of the Army located at 101 Army Pentagon, Washington, DC 20310-0101.

3. This is an action and is for and by Jonathan P. Graham, former employee of the United States Government, Agency of Program Executive Office Command Control Communication, Tactical (hereinafter PEOC3T) located at Fort Bragg, North Carolina. This case is within the jurisdiction of the United States District Court as it involves Federal Agents violating Federal Laws and violating Federal Civil Rights Laws. It is beyond the authority of State Court even though committed against a state citizen.

4. The acts complained of in this suit concern the Federal jurisdiction enforcing the rights to and or violation of:

   a. Deprivation of Rights under color of Law, 18 U.S. Code 241, 242, Civil Action for deprivation of Rights 42 US Code sec 1983, Equal Protection Clause Violations, Privacy Act of 1974, 5 U.S.C. § 552a (1988), Violation of Freedom of information and Privacy Act, Abuse of Law, by selective enforcement based on Race, by selective prosecution based on race, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, 42 U.K. 5 3789dfc., 42 U.S.C. § 1985 Conspiracy to interfere with Civil Rights, Violation of Due Process ensuring the equality of all citizens, Police misconduct 42 U.S.C. § 14141, Malicious Prosecution, violation of Administrative Procedure Act 5 U.S.C. § 701, et seq. (1988), Violation of the Fourth, Fifth and Fourteenth Amendment to the United States Constitution at the hands of or caused by The Secretary of the Army law enforcement agency Criminal Investigative Division (CID) of the United States Army.

   b. The plaintiff whom is Black became aware of the action noted above including discriminatory acts on the release of the un-redacted CID report on or about (refer to herein as O/A) June 2016. In that report it was supposedly reported to the United States Army Criminal Investigative Division (refer to herein as CID) on 24 Sep 2012 by a White accuser, Mr. Derek Kinlaw that he suspected the plaintiff stole Government Equipment while in Iraq with equipment the Plaintiff gave him Exhibit 2. This investigation was initiated on nothing but the word of Mr. Kinlaw and property he stole from the office and the Helmet and Kevlar he acquired elsewhere. This evidence was within the CID report provided to the Assistant United States Attorney (refer to herein as AUSA) seeking charges against the Plaintiff by CID. On 19 May 2012, the Plaintiff reported the wrongdoings and criminal acts of Mr. Derek Kinlaw (White) whom was a Lead Supervisor and another supervisor Mr. Richard Crider (White) to their leadership Exhibit 4. This exhibit was also given to the CID Agents on the Plaintiff return to the United Sates from Afghanistan in March 2013 and not place in the CID report or given to the AUSA. It was mentioned in the Plaintiff's email letter to CID from Afghanistan O/A 22Feb 2013 once his home was searched Exhibit 17. During the questioning of Mrs. Cynthia Graham on 21 Feb 2013 she likewise told CID Mr. Kinlaw was involved on page 3 of Exhibit 16. CID

never questioned Mr. Kinlaw about his motives after receiving Exhibit 4, 16 or 17. The result was the removal of Mr. Kinlaw as the lead Supervisor Exhibit 19, however Mr. Crider (White) remained the plaintiff's supervisor and no investigation conducted into his criminal activities. Mr. Crider was reported as having committed a Federal Felony by impersonating an Active Duty Officer with an Identification Card that he was not authorized to have and receiving benefits from that impersonation. CID vigorously investigated the Plaintiff for nearly two years based solely on the evidence of suspicion in the CID report which was in the name of Mr. Kinlaw, supported by Mr. Crider and Mr. Raymond Krechko (White) all friends of Mr. Kinlaw. On 17 May 2013 Mr. Kinlaw stated to the Moore County Court when accused of reporting the Plaintiff to the authorities with this answer: "Plaintiff admits that he has at some point received a computer through the mail and that he has used that computer. All other facts in the Plaintiff's complaint are attributed to "someone else and the defendant is without sufficient knowledge to admit or deny them. All facts not specifically admitted are hereby denied." Exhibit 15 (Please note: his lawyer does speak for the Plaintiff however, Plaintiff was used as the first word in the sentence.) Mr. Kinlaw denied making the report to CID. On 23 May 2013, This exculpatory evidence was provided by the Plaintiff to CID by both phone and by email Exhibit 15. However, it was never given to the AUSA and more evidence hidden by CID. Mr. Kinlaw's statement to the Moore County Court contradicts the CID report which bears his name. The Plaintiff reasoned that both cannot be true and the fact that Mr. Kinlaw disputed this report to a Court of Law invalidated the entire investigation and further showed a continual bias attempt to show favoritism to Whites involved with the case. The Plaintiff realized that if Mr. Kinlaw received the computer via Official Government mail, mailed by the Plaintiff while in Iraq addressed to Mr. Ross Roach it was not physically possible for the Plaintiff to have given it to the accuser as mentioned in the report and clearly theft by Mr. Kinlaw. The Plaintiff remained in Iraq a full 4-5 months after the last shipment to Mr. Roach as the Plaintiff's headquarters was moved from Baghdad to Al ASAD, Iraq. All of which was told to CID to include, Mr. Kinlaw states he received the computer through the mail, which contradicted it being given to the him by the Plaintiff as seen in the CID report. This was also pointed out to CID as late as April 2015 when the Plaintiff again notifies CID that Mr. Kinlaw stole the computer from the mail or the office and more evidence

sent to Agent Thomson-Young and Agent Jeffery Tellock Exhibit 14. Again, no investigation was conducted by CID into the theft. The Plaintiff again tell CID that a computer which would tell the truth of the case through computer forensics was in the closet of the office, confirmed by a coworker Mr. Mike Tracey. The plaintiff as stated to CID, and admitted by Mr. Kinlaw that the computer was mailed to the office via Official Government Mail Exhibit 1, but offers no explanation as to how the Plaintiff gained control of the computer addressed to Mr. Roach while the Plaintiff was thousands of miles away in Iraq and months before his return. CID did not ask nor cared to ask, the Accuser was White and Mr. Graham was Black. The Plaintiff asked CID why would a contractor (as Mr. Kinlaw was at the time) feel it prudent to secure a non-issued government property (Theft) at his home for over a year instead of providing it to the addressee a government employee (Mail theft) or report it at the time of the alleged delivery, and was told Mr. Kinlaw was not under investigation. Mr. Kinlaw likewise stated, a conversation with co-workers helped him determine the possibility of theft. It would not be needed to determine theft or mail theft by the Plaintiff if the box was addressed to Mr. Roach as stated and then given to Mr. Kinlaw. Mr. Kinlaw reported the suspicion not immediately but a year plus later, once the Plaintiff reported Mr. Kinlaw and Mr. Crider to superiors. With the full force of the law allowed to Federal Agents these questions were not asked because the intent was to find evidence only against the Plaintiff, the only black person in a sea of white men.

c. In addition, the CID report states no date when the alleged stolen computer was given to the accuser which was integral to the case. Likewise, no other information was reported as having been given to the accuser Exhibit 2. The date it was received by the accuser was integral to the investigation against the Plaintiff. As the Plaintiff, could not have given the item to the accuser if he was still in Iraq when the accuser reportedly received it. The Plaintiff observed that white men were more favorably treated when the Plaintiff informed CID that he never gave the government computer to Mr. Kinlaw (whom was a contractor at the time) and that the three (3) SPAWAR computers were mailed Official Government Mail addressed to a Government Employee Mr. Ross Roach (White). The Plaintiff told CID that the only computers in the plaintiff's possession with operational hard drives while in Iraq that were given to him for the purpose of returning

them to government service and Mr. Kinlaw and Mr. Young stole them (both White, neither investigated). The accuser himself provided to CID a copy of the mailing label clearly addressed to Mr. Ross Roach Exhibit 3. Mr. Roach told the Plaintiff he never received the computers after the investigation was started. The evidence of it being mailed is likewise within the CID report but ignored to the benefit of the white men whom were accused of theft of that computer. A coworker of Mr. Roach, Mr. Donald Young (White) likewise admitted he had one of the Government computers at his home and yet another theft by a white man and ignored with favorable treatment. This evidence was shown and told to CID Agents by the Plaintiff and the Plaintiff explained the importance of it being secured to prove his innocence but was told they did not need it for their case Exhibit 24. This information of theft was provided to CID on no less than two occasions March/Apr 2013 during interrogations. It was also provided April 2015 during a telephone interview followed up with evidence sent Exhibit 14. On the first occasion CID informed the Plaintiff they had no intention to investigate Mr. Kinlaw nor Mr. Young.

d. Months before the redacted report was released to the Plaintiff, on 25 Sep 2014 a report summary was given to a Government attorney Mr. Peter Kozlowski (White), whom was defending Mr. Kinlaw's actions and those of the (White) supervisors to include Mr. Crider and that of the Agency he represented. This attorney was searching for evidence that they made the accusation as truthful. Meanwhile simultaneously CID was continuously denying the report to the Plaintiff Exhibit 5. Even the Government Attorney states that the Plaintiff believed the investigation was based on retaliatory reasons by Mr. Kinlaw. Thus far Mr. Kinlaw, Mr. Crider and Mr. Krechko have provided contradictive accounts from this CID report two of whom has done so in sworn documents Mr. Krechko and Mr. Crider.

e. During a search of the Plaintiff's home while he was serving his country in Afghanistan CID attempted to secure and deny the Plaintiff of his property despite no evidence of theft, no evidence of destruction of serial number nor any other marks of such destruction and receipts being shown for the property Exhibit 13. Despite the receipts all dated in 2012 and most before the state of the investigation and no evidence of theft

CID (Federal Agents) attempted to deprive the Plaintiff of his property but were denied as noted in the CID report page 2 of Exhibit 12. by the accompanying Wake County Sheriff's Deputies (SGT Averette, Investigator Goodwin and Investigator Everett). The Plaintiff has a business that buys and sells Government Liquidation products from the State of North Carolina and the United States Government through Govliquidation.com and receipts provided as noted in the CID report Exhibit 13. Under suspicion that CID was conducting a bias investigation with the intent to deprive all constitutional Rights and after being told they had no intention to investigate the two White suspects, the Plaintiff electronically notified the Postal Inspector of the official government mail theft which CID suppressed. In addition, the Plaintiff notified The United States Military Police Investigation about the theft and again it was suppressed by CID. When the Plaintiff provided the names of witnesses that Mr. Kinlaw lied about how he acquired the equipment none were interviewed, all of whom were black. The plaintiff's wife whom is white worked in the same office and was approached by Mr. Kinlaw while the computers were laying on the office floor while the Plaintiff was still in Iraq. This information was told to CID to have them interview her and the Plaintiff was told they had all they needed from his wife. None of the CID Agents where black and the Plaintiff believes discriminatory acts based on his skin color were the cause of his investigation, the consequence of the investigation, and the lack of investigation of any White person associated including Named White men in similar situations more favorably treated.

f. Yet another professed friend Mr. Raymond Krechko (White) of Mr. Kinlaw informed CID that the Plaintiff removed serial numbers from computers and other items Exhibit 11, 12, 20. Despite searching the plaintiff's home, items turned in as evidence and the office space which included some of the $100,000 plus of equipment that Mr. Graham shipped to Mr. Roach for government use at the office, not a single piece was found to have a serial number removed, nor anything stolen. Instead of asking Mr. Roach about a list of items to look for while in Iraq to send to the office, CID asked Mr. Krechko whom was likewise in Iraq with Mr. Graham nearly 100 miles away in a war zone and would have no knowledge and Mr. Krechko was Mr. Graham's Subordinate in Iraq. Mr. Graham had to counsel Mr. Krechko for violating CENTCOM and Higher Headquarter policies without proper authorization. During a heated exchange between the Plaintiff and CID once

suspicion was apparent of a bias investigation and again telling them the motive for Mr. Kinlaw and friends to lie steal and frame him was due to the reporting their action as noted in the CID report Exhibit 21. A comment of "we answer to no one on how they conduct their investigations" was uttered when the Plaintiff threated to report them to the Inspector General and other authorities. This was the reason the Plaintiff notified the Post Master of mail theft, contacted the Military Police Investigation, contacted the Department of Justice, CID Headquarters, and the Inspector General. Which thus far, their statement appears to be true, and their unlimited, unquestioned and bias enforcement of the law will only be ceased by a Federal Court should the Plaintiff live to see it.

g. Yet another example of intent to use the prejudice of CID with complete disregard that justice would prevail, Mr. Kinlaw bragged in an email that things would get better and that they already began on 11 Jan 2013 Exhibit 18. This was the date that Mrs. Graham resigned from the office noting a hostile work environment Exhibit 9. The Plaintiff was repeatedly asked to take a Polygraph and agreed Exhibit 23 each time, until the last request when he demanded that Mr. Kinlaw be given it as well and was told he's not under investigation. Knowledge of the Plaintiff's business on eBay was known throughout the office as noted by Mr. Roach statement to CID Exhibit 21 but ignored. Despite this the plaintiff's supervisor Mr. Crider reported to CID that Mrs. Graham was selling stuff on EBay as if illegally to again support a one-sided investigation as well as an attempt to incriminate their minor son on the last entry of Exhibit 7. Mr. Crider again informs CID that Mr. Graham was currently in Afghanistan as if to coordinate the bias search to inflict the greatest harm Exhibit 12. On yet another occasion when CID refused to secure the computer returned to the office by Mr. Young, the Plaintiff showed the CID Agent all the equipment sent to the office by the Plaintiff in which the Agent looked for serial numbers. To include computers that the Plaintiff pointed out that he gave to others in the office all with intact serial numbers.

h. One of the white men the plaintiff reported to have stolen property (Mr. Kinlaw) stated in a sworn affidavit, that he was advised by CID Agents not to speak with others about the investigation Exhibit 6, even EEO investigators. Yet another white man Mr. Crider

had likewise stated in an affidavit that he also had been advised by CID not to discuss his involvement in the actions against the Plaintiff Exhibit 8.

i. Despite the request by the Plaintiff to have his name removed from titling and a correction to the record reference Probable Cause, due to the Brady Violation by hiding exculpatory evidence and repeated constitutional and civil rights violation including privacy violations, CID has yet to remove the title and correct the record. After a hard fight to have the case reopened and a complete and thorough investigation conducted to clear his name, CID investigators requested that the Plaintiff take a Polygraph stating it was scientifically equal to a DNA test. This test would be necessary to determine if the Plaintiff was telling the truth. Despite clear and convincing evidence that all of the Plaintiffs accusers have provided contradictive statements, the possibility that CID fabricated the report and evidence, no evidence of theft, or intended theft by the Plaintiff as stated by the AUSA, not a single piece of evidence of untruthfulness by the Plaintiff, it is the Plaintiff they asked to take a Polygraph to ensure his is telling the truth. The Plaintiff colorfully responded and also stated "you did not ask Mr. Kinlaw, Mr. Crider, Mr. Krechko when they accused me to take a Polygraph, you did not ask any of these white men to take a Polygraph before I lost my job, lost my home and was labeled a thief, by unwarranted probable cause ". "I have provided you with evidence that Mr. Kinlaw and Mr. Young stole property and stole the mail and you did nothing" (or something to this affect). The harm to the Plaintiff is continuous, ongoing and lasting. Recently the Plaintiff was denied a civil action stating Probable Cause existed to believe he stole Government Property from the CID report in question. This was in the report despite the above noted violations along with no evidence of theft, no report of theft, no evidence of intended theft and no evidence of destruction of Government Property as noted by the AUSA. In addition, due to the lack of an unbiased investigation the plaintiff was fired from his government job by the very White men he reported to CID whom were never investigated. He likewise suffers a negative mark which prevents his secret clearance from being secured by a new potential employer and seriously damages any possibility of ever securing a Top-Secret Clearance again due to this bias investigation in which the suspicion of white men led to a full-blown investigation and the accusation with evidence by a Black man leads to nothing more than continual

support for the white men involved and no investigation. In fact, the investigation was so egregiously and intentionally bias, CID Agents even refused to speak with a white witness whom witnessed that the three government computers were picked up by one of the three people authorized to pick up the mail (Mr. Roach, Mr. Young, and Mr. Kinlaw) and was sitting on the floor of the Government office mailed there by the Plaintiff from Iraq in 2011 for Government use and the Plaintiff remained in Iraq for another 4-5 months.

j. The AUSA likewise complicity participated to the action of CID by titling the Plaintiff and stating Probable cause exists based solely on the testimony of Mr. Kinlaw and friends all of whom are white, when in the same breath state "it would be difficult to prove that the property in question was stolen, much less that Mr. Graham intended to steal it" Exhibit 10. Favoring Whites with no investigation nor charges or probable cause against anyone white when clear evidence is within the hand of CID and the AUSA. Due to these actions and inactions, the Plaintiff has been denied the basic rights afforded to normal citizens referencing this report which favors whites. Office of Special Counsel stated it may have played a role in the Plaintiff termination from his employment, Denial by the Boy Scouts of America when application ask if the Plaintiff has ever been investigated by the US Government and the results of the investigation. The Plaintiff has been labeled a criminal without due process for simply being Black. The report was submitted to an Administrative Judge by Government Attorneys in a civil matter attacking the Plaintiff's character by the same Agent that suppressed exculpatory evidence.

5. The Plaintiff respectfully believes and hopes the Court agrees that enough information is provided to establish premia facie to warrant a hearing before a Federal Judge. For the sake of clarity, the Plaintiff is Black and Whites whom were reported to have stolen the same computer with evidence as well as other crimes were so favorably treated that the Plaintiff directly suffered due to that bias treatment at the hands of the Secretary of the Army's Agents.

6. The Plaintiff seeks the following relief

   A. The maximum monetary amount allowed by law and awarded by this court

B. Speculative damages in the amount of $1,000,000.

C. Incidental losses to correct the wrongs already suffered.

D. Compensatory damages due to proximately caused by the defendant actions.

E. Punitive/Exemplary damages in the amount of four times the awarded amount.

F. General Damages for emotional and psychological stress in the amount of $250,000

G. Aggravated Damages due to the egregious bias conduct in the amount of $1,000,00

H. Attorney's fees should one be obtained

I. All cost associated with this case

J. The immediate removal of any/all reference from and any/all documents that state any negative remarks of any kind or likeness was established against Mr. Graham and Mrs. Graham in this investigation

K. The immediate and a full unbiased investigation into the allegation noted by the Plaintiff

L. A Immediate letter identifying that the report was erroneous and bias to anyone that received a copy of this CID report and those whom will become aware on request.

7. Under Federal Rule of Civil Procedure, by signing herein I certify to the best of knowledge, the information, and the belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rules of the Court as known.

8. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Feb 25, 2017

Jonathan P. Graham

5405 Cazelet Court
Garner, NC 27529
919-455-1758